|   |   |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC-SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC#:<br>DATE FILED: 6/8/2020 |

UNITED STATES OF AMERICA,

v.

JESUS WILFREDO ENCARNACION,

                Defendant.

No. 19-cr-118 (RA)

ORDER

RONNIE ABRAMS, United States District Judge:

    On August 9, 2019, Mr. Encarnacion provided notice pursuant to Federal Rule of Criminal Procedure 12.2 that he intended to assert an insanity defense at trial. Dkt. 19. Accordingly, pursuant to 18 U.S.C. § 4242(a) and Rule 12.2(c), the Court granted the Government's application to engage Dr. Kleinman to conduct an evaluation of Mr. Encarnacion. Dkt. 28. On January 22, 2020, Mr. Encarnacion plead guilty.

    In light of his upcoming sentencing, which is now scheduled for June 25, Mr. Encarnacion wrote to the Court "respectfully request[ing] that Dr. Kleinman and the government be ordered to immediately disclose his report." Dkt. 63. In response, the Government represented that it would provide the Court and Mr. Encarnacion with any report "as soon as it is available." Dkt. 66. However, in that submission, the Government also stated its intention to use Dr. Kleinman's report and opinion in connection with Mr. Encarnacion's sentencing, in particular to "rebut certain characterizations" that Mr. Encarnacion might raise about his mental health at sentencing and that are already noted in his pre-sentence report ("PSR"). *Id.* Mr. Encarnacion contends that the Government's "use against [him] at his sentencing [of] (i) any

statements that [he] made to Dr. Kleinman; (ii) any testimony or report by Dr. Kleinman based on those statements; or (iii) any other fruit of those statements" would contravene the plain language of Rule 12.2(c)(4) and seeks to preclude the Government from doing so. Dkt. 67. On June 2, the Court held a phone conference to further address this issue. After review of the parties' submissions and the arguments raised during the conference, the Court concludes that Rule 12.2(c)(4) does indeed bar the Government's use of Mr. Encarnacion's statements, as well as any testimony, report, or fruits of those statements, in connection with Mr. Encarnacion's sentencing.

Rule 12.2(c)(4)(A)'s language is straightforward.[1] If a defendant provides notice under Rule 12.2(a) or (b) and a court orders an examination of the defendant pursuant to Rule 12.2(c)(1)(B), statements made by the defendant during that examination cannot be used as "evidence against [him] in any criminal proceeding except on an issue regarding [the] mental condition on which the defendant has introduced evidence of incompetency or evidence requiring notice under Rule 12.2(a) or (b)(1)." Fed. R. Crim. P. 12.2(c)(4)(A). Here, Mr. Encarnacion provided Rule 12.2 notice because he intended to assert an insanity defense at trial, which led to the Court's order authorizing Dr. Kleinman to examine him. There is thus no question that the Government is now seeking to use evidence that is subject to Rule 12.2(c)(4)(A)'s limitations.

Rule 12.2(c)(4)(A)'s plain text precludes the Government's proposed use of Mr. Encarnacion's statements in connection with his sentencing. As an initial matter, Mr. Encarnacion has not alleged that he is incompetent. *See* Dkt. 67 (representing that Mr. Encarnacion "is not claiming that he is incompetent"). In addition, Mr. Encarnacion is no longer

---

[1] Rule 12.2(c)(4)(B) does not apply here because this is not a capital proceeding.

raising "an issue regarding [the] mental condition on which [he] . . . introduced . . . evidence requiring notice under Rule 12.2(a) or (b)(1)[.]" Fed. R. Crim. P. 12.2(c)(4)(A).  Once he pled guilty on January 22, 2020, he withdrew his insanity defense.  Indeed, during the plea hearing, defense counsel stated that "[o]bviously there's not going to be an insanity defense proceeding[.]"  Dkt. 59 at Tr. 25:4-7; *see also* Dkt. 67 at 2 ("Mr. Encarnacion has pled guilty and is not claiming . . . that he was legally insane at the time of his offense.").  Mr. Encarnacion is thus no longer challenging "the issue of guilt," which led the Court to order the mental examination.  Fed. R. Crim. P. 12.2(b)(1); *see also* Fed. R. Crim. P. 12.2(c)(1)(B).  Given that Mr. Encarnacion does not currently intend to introduce evidence "regarding [the] mental condition" for which he gave Rule 12.2 notice – or introduce evidence of incompetence – Rule 12.2(c)(4)(A) bars the Government from using any "statement made by [Mr. Encarnacion] in the course of [the] examination . . . , . . . testimony by the expert based on the statement, . . . [or] fruits of the statement" against him in connection with his sentencing.  Fed. R. Crim. P. 12.2(c)(4); *see also United States v. Curtis*, 328 F.3d 141, 145 (4th Cir. 2003) ("Fed. R. Crim. P. 12.2(c) clearly provides that the government may introduce expert testimony *if* the defendant has raised the issue of his mental condition.").

     Several additional points are worthy of discussion.  First, the Court agrees with Mr. Encarnacion that his mental health is a relevant consideration at sentencing when analyzing the 18 U.S.C. § 3553(a) factors, even if he "is not seeking any departures under the Guidelines." Dkt. 67 at 2.  Consideration of his mental health in this capacity is distinct from the legal assertion of insanity for which Mr. Encarnacion gave Rule 12.2 notice.  *See Cone v. Bell*, 556 U.S. 449, 474 (2009) (explaining that evidence related to a defendant's psychosis can be relevant to mitigation at sentencing, even if not relevant to the issue of guilt).  In this respect, Mr.

Encarnacion's upcoming sentencing should be no different from any other sentencing, during which a judge might consider a defendant's life circumstances and mental health. Thus, the fact that defense counsel provided Probation a July 2019 report evaluating Mr. Encarnacion's mental health did not introduce evidence of the "mental condition" for which Mr. Encarnacion gave Rule 12.2 notice.

Second, this ruling aligns with "the purpose of Rule 12.2(c)," which "is to secure the defendant's Fifth Amendment right against self-incrimination." *United States v. Troya*, 733 F.3d 1125, 1138 (11th Cir. 2013); *see also United States v. Miller*, 267 F. Supp. 2d 104, 107 (D. Maine 2003) ("The purpose of Rule 12.2's provision limiting the use of such statements is to protect a defendant's Fifth Amendment right against self-incrimination."). Rule 12.2(c)(4)'s "plain language . . . holds that the future use by the prosecution of such statements is precluded insofar as it seeks to use these statements *against* the defendant." *Miller*, 267 F. Supp. at 108. This is because "using a defendant's statements from a psychiatric evaluation 'for the limited, neutral purpose of determining his competency to stand trial,'" or sanity, "is quite different from using such statements 'for a much broader objective that [is] plainly adverse to the defendant." *Id.* (quoting *Estelle v. Smith*, 451 U.S. 454, 462-63 (1981)). Accordingly, to now permit the Government to use statements made during Dr. Kleinman's evaluation against Mr. Encarnacion at sentencing, would violate Rule 12.2(c)(4), as well as Mr. Encarnacion's Fifth Amendment rights.

On a final note, during the phone conference, the Government accurately noted that Rule 12.2's "Notes of Committee on the Judiciary, House Report No. 94-247; 1975 Amendment" state that "[t]he provision is flexible and does not totally preclude the use of such statements." Indeed, the Committee Notes explicitly provide, "[f]or example, [that] the defendant's statement can be

used at a separate determination of the issue of sanity or for sentencing purposes once guilt has been determined." Fed. R. Crim. P. 12.2, Committee on the Judiciary's Note to 1975 Amendment. But "[w]hen interpreting a rule of procedure, we review the text for its 'plain meaning.'" *U.S. ex rel. Eisenstein v. City of New York*, 540 F.3d 94, 97 (2d Cir. 2008). Thus, only "[t]o the extent that the text is ambiguous" does a court "seek to determine the intent by looking to other materials, such as the Advisory Committee Notes that often accompany the rules." *Id.*; *see also United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002) ("In the absence of a clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule[.]"); *Williams v. United States*, 512 U.S. 594, 602 (1994) ("Without deciding exactly how much weight to give the Notes in this particular situation, we conclude that the policy expressed in the Rule's text points clearly enough in one direction that it outweighs whatever force the Notes may have."); *Sorensen v. City of New York*, 413 F.3d 292, 296 (2d Cir. 2005) ("The 1993 Advisory Committee Notes for Fed. R. App. P. 4(a)(4) are helpful in resolving the apparent ambiguity.").

    Because the text of Rule 12.2(c)(4)(A) is not ambiguous in this particular instance, the Court gives this committee note little, if any, weight. Rule 12.2(c)(4)'s subheader is specifically entitled, "Inadmissibility of a Defendant's Statements," and the rule's text clearly establishes that "an issue regarding [the] mental condition" for which a defendant gave notice under Rule 12.2 must be at issue before the government may use any fruits of the relevant evaluation. Fed. R. Crim. P. 12.2(c)(4). Here, the relevant "mental condition" – that is, insanity at the time of the offense – is no longer at issue. Moreover, even if the Court determined that Rule 12.2(c)(4)'s text was at all ambiguous and considered the committee notes, it would also need to account for more recent notes, some of which address Rule 12.2(c)'s intent to protect a defendant's right

against self-incrimination. It is thus not apparent how, if at all, the two sentences cited by the Government would align with the rule's more recent comments.

In conclusion, the Government may not use Dr. Kleinman's report against Mr. Encarnacion in connection with his sentencing. Specifically, the Government cannot (1) use any statements that Mr. Encarnacion made to Dr. Kleinman; (2) any testimony or report by Dr. Kleinman based on those statements, or (3) any other fruits of those statements. To the extent that Mr. Encarnacion's sentencing submission calls into question the "mental condition" for which he gave Rule 12.2 notice or "the issue of guilt," Fed. R. Crim. P. 12.2(b)(1), (c)(4), the Government may be permitted to renew its motion at that time.

SO ORDERED.

Dated:   June 8, 2020
         New York, New York

_____
Ronnie Abrams
United States District Judge